STATE OF NORTH CAROLINA v. EDWARD STEVE TURNER

No. 7529SC956

(Filed 7 April 1976)

**Automobiles § 121— defendant behind wheel of car with engine running — sufficiency to prove he was driving**

> In a prosecution of defendant for driving under the influence and driving while his license was revoked, State's evidence that defendant was seated behind the steering wheel of a car which had the motor running was sufficient to prove that defendant was driving the vehicle. G.S. 20-4.01(25).

APPEAL by defendant from *Farrell, Judge.* Judgment entered 14 August 1975 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals 8 March 1976.

Defendant was charged with driving under the influence, driving while his license was revoked, and voluntary manslaughter. At the close of State's evidence, the trial court, pursuant to defendant's motion, reduced the charge of voluntary manslaughter to involuntary manslaughter. From pleas of not guilty, the jury returned verdicts of guilty as to all charges. From judgment sentencing him to various terms of imprisonment, defendant appealed.

The State's evidence tended to show that on 21 December 1974, at approximately 6:30 p.m., James Lee Blanton was observed leaving a "Super Chef" on foot. Approximately 30 minutes later, Blanton was found dead, lying on the side of the road. Strewn about the immediate vicinity of the body were pieces of broken glass from a headlight and a broken piece of a radio antenna. According to medical evidence, Blanton died from a " . . . trauma that . . . ruptured the large blood vessel that leads from the heart with secondary hemorrhage and bleeding."

Other evidence indicated that defendant, at approximately 6:45 p.m., was in a "yellow Plymouth automobile" in the Super Chef parking lot and according to witness E. M. Jolley, he " . . . saw a yellow Plymouth automobile with the motor running and steam and water running out of it, we started down to the car but about the time we reached it the motor went dead and the car started rolling backward at which time I opened the door, put my foot on the brake and stopped the car. Mr. Gould went around to the driver's side and had the person under the steering wheel to get in the back seat. (Mr. Jolley, then identified the defendant as the person under the steering wheel of the automobile.) When I first noticed the person in the automobile, he was resting his head on the steering wheel and leaning toward the door in the left side."

Roger Bell, an officer with the County Sheriff's office, testified that he, too, was at the Super Chef on the night in question and saw the defendant

" . . . sitting in the back seat of a yellow Plymouth automobile. I went to the driver's side and hollered to him through the window; he was slumped over; I opened the door and asked him to get out. I had to help him walk because he had a strong odor of alcohol about his breath and he was staggering.

He asked me what had happened; he didn't seem to know what was going on; he seemed dazed. I observed him for another ten minutes then took him to the Rutherford County jail. In my opinion, he was under the influence of some intoxicating liquor and his mental and physical faculties were impaired. I later saw the yellow Plymouth at the Rutherford County jail. The right headlight lens of the vehicle was broken out; the aerial wire of the antenna wire was broken off."

An SBI microanalyst testified that the glass and antenna found near Blanton's body came from defendant's car and that hairs found on the "antenna area of the vehicle" matched hair samples taken from the deceased.

The parties stipulated that on 21 December 1974 defendant's license already had been revoked and that defendant had received notice of revocation.

Defendant presented no evidence, but moved for judgment as of nonsuit.

*Attorney General Edmisten, by Special Deputy Attorney General William W. Melvin and Assistant Attorney General William B. Ray, for the State.*

*Robert W. Wolf for defendant appellant.*

MORRIS, Judge.

Defendant's assignments of error are to the trial court's failure to grant his motions for nonsuit on all charges. Specifically, defendant maintains that with respect to the charges of driving under the influence and while his license was revoked the State failed to bring forward evidence showing that defendant was driving the car. Defendant further argues that with respect to the charge of involuntary manslaughter, the State failed to present sufficient evidence that defendant's culpable negligence, if any, was a proximate cause of Blanton's death. We disagree.

Under G.S. 20-4.01 (25), an operator of a motor vehicle is any " . . . person in actual physical control of a vehicle which is in motion or which has the engine running." The evidence was plenary that defendant was seated behind the steering wheel of a car which had the motor running. The evidence brings defendant within the purview of the statute as to operation of the vehicle, and the evidence is plenary to support a conviction of driving under the influence. It was stipulated that defendant's license had been revoked and that defendant had had notice of the revocation.

The evidence, moreover, was sufficient to go to the jury on the involuntary manslaughter issue in view of all the direct and circumstantial evidence presented.

No error.

Judges HEDRICK and ARNOLD concur.