THE STATE OF OHIO *v.* COMBS.

(No. C 85 TRD 1163 — Decided
April 15, 1985.)

Hamilton County Municipal Court.

*Robert S. Holzman,* assistant county prosecutor, for plaintiff.
*Barbara K. Barden,* for defendant.

PAINTER, J. This matter came on for trial to the court, defendant, Gary Combs, having been charged with violation of R.C. 4509.76 for operating a motor vehicle under a Financial Responsibility Act ("FRA") suspension. The fact that defendant was, at the time of the incident, under such a suspension was not disputed, defendant contending simply that he was not "driving" a "motor vehicle" under the facts of this case.

On December 8, 1984, defendant was stopped by Deputy Sheriff Owen Hobbs as he was steering his ex-wife's automobile down Fields-Ertel Road in Hamilton County, Ohio. Defendant's automobile was being pushed by another vehicle operated by a friend. The motor on defendant's vehicle was not running; and, according to defendant, the battery was totally dead and the automobile could not be started. Defendant's ex-wife had driven the vehicle to work, but could not start it when she attempted to leave. She called the defendant who, with his friend, responded by going to the parking lot where the car was located. They could not start the automobile, but decided that it would be prudent to remove it from the parking lot, and they proceeded to do so by pushing it down the road to a nearby service station. Before they could reach the service station Deputy Hobbs observed them and inquired into the situation, and in the course of his inquiry he discovered that Combs was under suspension.

The issue presented is whether or not the "steering" of an automobile down the road, while it is pushed by another motor vehicle, constitutes a violation of R.C. 4509.76 which states, in pertinent part, as follows:

"No person whose license or registration * * * has been suspended or revoked under R.C. 4509.01 to 4509.78 * * * shall, during such suspension or revocation, drive any motor vehicle upon any highway * * *."

Why the legislature saw fit to use the word "drive" rather than "operate" we can only speculate. However, it is clear that the legislature intended by this Act that persons under FRA disability, such as Combs, be proscribed from placing themselves in position to inflict damages on persons and property while behind the wheel of a motor vehicle.

The FRA is an attempt by the legislature to ensure that Ohio motorists are financially responsible should they be found liable in an accident. It provides for compulsory reporting of accidents, and requires a security deposit or other proof of financial responsibility from individuals who have reported accidents, been convicted of specified traffic offenses, or have failed to satisfy judgments arising out of the operation of a motor vehicle. Persons who fail to demonstrate financial responsibility

under the Act have their driving privileges suspended to protect the public and responsible motor vehicle drivers and owners against the actions of reckless and financially irresponsible motor vehicle drivers and owners. See 7 Ohio Jurisprudence 3d (1978) 193, Automobiles and Other Vehicles, Section 120; *Toledo* v. *Bernoir* (1969), 18 Ohio St. 2d 94 [47 O.O.2d 241].

R.C. 4509.01(B) defines "driver" as "every person who drives or is in actual physical control of a motor vehicle."

R.C. 4509.01(I) defines "motor vehicle" as "every vehicle propelled by power other than muscular power," and goes on to list several exclusions, none of which relates to an automobile being pushed by another automobile.

An automobile while pushed by another car is being propelled by power other than muscular power, and both are "motor vehicles" under R.C. 4509.01(I). It is not necessary that defendant's motor be operating — the vehicle he was driving was being propelled down the highway *by* a motor vehicle, thus, under the above definition, *becoming* a motor vehicle itself. The same would hold true even if defendant's vehicle had no motor at all. Thus, when Combs "steered" his ex-wife's car while being propelled by another car he was "driving" a "motor vehicle."

The defense argues that a distinction should be made between "driving" and being in "physical control" of a motor vehicle. While there is a distinction between "operating" and being in "actual physical control" of a vehicle, that distinction is not relevant in this case. See *State* v. *Martin* (1982), 5 Ohio Misc. 2d 22. To make a distinction here is to ignore the clear intent of the legislature. While steering this motor vehicle down a public thoroughfare, defendant was clearly in position to inflict damages for which he has failed to demonstrate capability of payment.

Defendant's license to drive was suspended, and we must find him guilty of driving under suspension in violation of R.C. 4509.76.

*Defendant guilty.*